IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE RULE 45 SUBPOENA ISSUED TO SCOTT HOWARD DATED FEBRUARY 10, 2023 | D. Colo. Case No. _____ |

| | |
|---|---|
| *In re Cattle and Beef Antitrust Litigation* | D. Minn. Case No. 22-md-3031 |
| This Document Relates to: | (JRT/JFD) |
| ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH
SUBPOENA ISSUED TO SCOTT HOWARD**

## INTRODUCTION

On February 10, 2023, Plaintiffs in a coordinated multidistrict litigation currently pending in the United States District Court for the District of Minnesota, *In re Cattle and Beef Antitrust Litigation*, Case No. 22-md-3031 (JRT/JFD) ("*Cattle* Litigation"), issued a subpoena to three former Cargill employees, including Scott Howard—a Colorado resident who is not a party to that lawsuit.[1] Plaintiffs in that case allege that the Defendants, four meatpackers, conspired starting in 2015 to procure and slaughter fewer fed cattle, thereby affecting the prices they paid for fed cattle and charged for beef.[2] Mr. Howard is not named in any of Plaintiffs' complaints.[3]

Yet Plaintiffs' subpoena targeted a broad range of information on his *personal* cell phone and social media usage, including communications with any Defendant without any subject-matter limitation at all and communications with other meatpackers,[4] which the MDL Court ruled that even the *Cattle* Defendants need not produce.[5] This data is neither relevant nor proportionate to the needs of the case and the scope of the subpoena is even broader than discovery limits set by the MDL magistrate judge (Magistrate Judge Bowbeer) for parties to the *Cattle* Litigation.

Plaintiffs apparently requested this information simply because Mr. Howard's former employer Cargill Meat Solutions Corporation, a defendant in the litigation,[6] agreed to make

---

[1] Stull Decl., Ex. 1 (Subpoena).

[2] Williams Decl. ¶ 4.

[3] Williams Decl. ¶ 5.

[4] Stull Decl., Ex. 1 (Subpoena).

[5] Williams Decl. ¶ 8.

[6] Cargill, Incorporated, is also a defendant in the litigation. For purposes of this motion, Mr. Howard refers to Cargill Meat Solutions Corporation and Cargill, Incorporated, collectively, as "Cargill."

Mr. Howard a document custodian in that litigation and disclosed that it does not have possession, custody, or control over the data on Mr. Howard's personal cell phone.[7] Cargill has already agreed to produce any nonprivileged, responsive emails and other communications collected from Mr. Howard's work files that *are* in Cargill's possession, custody, and control.[8] And Cargill has likewise agreed to produce responsive, nonprivileged cell phone-related communications for custodians whose cell phones *are* in its possession, custody, and control.[9] Yet despite all the information they will already have access to, Plaintiffs' broad subpoena sought to invade Mr. Howard's privacy, by requesting his personal data and communications.

Recognizing their overreach, Plaintiffs (to their credit) have agreed to narrow some of their requests. But even as modified, Plaintiffs' subpoena is still overbroad and unduly burdensome, particularly in light of Mr. Howard's substantial privacy interests in his personal cell phone and social-media communications. Accordingly, and for the reasons set forth below, Mr. Howard respectfully requests that the Court modify and narrow Plaintiffs' subpoena.

## BACKGROUND

Plaintiffs have alleged a supply-side conspiracy against certain producers of beef and purchasers of cattle in the United States, alleging that from at least January 1, 2015, through the present, Defendants conspired to reduce the purchase and slaughter of U.S. fed cattle and the production of fed cattle into beef, allegedly leading to "a suppression of the price of fed cattle" and "an increase in the price of beef." Order on Defs.' Mot. to Dismiss, *In re Cattle Antitrust Litig.*,

---

[7] Williams Decl. ¶¶ 10, 13.

[8] Williams Decl. ¶ 11.

[9] Williams Decl. ¶ 12.

Case No. 19-cv-1222 (JRT/HB), ECF No. 238 (D. Minn. Sept. 15, 2021), at 6. Mr. Howard's former employer, Cargill, is one of the defendants.

In response to Plaintiffs' discovery requests, Cargill agreed to add Mr. Howard as a document custodian.[10] The Court-ordered time period for unstructured data in the *Cattle* Litigation is January 1, 2013, to June 30, 2020.[11] As Cargill notified Plaintiffs, Mr. Howard began working in a role related to the beef scheduling and supply chain in April 2017; before then, he was a Food Scientist and Value Creation Manager, responsible for product research and development for beef, roles irrelevant to Plaintiffs' allegations.[12]

Cargill also disclosed that Scott Howard was among the Cargill document custodians that "appear to possess cellphones that were 'used for work purposes' more than a *de minimis* amount that may have 'unique, responsive, discoverable communications' in their cellphone data that is not within Cargill's possession, custody, or control."[13] In other words, Cargill did not have possession, custody, or control over Mr. Howard's personal cell phone.[14] Cargill did not provide Mr. Howard a cell phone for work use, and to the extent Mr. Howard used his personal cell phone for work, he understood that this use was governed by Cargill's mobile device policy, under which Cargill could access the data on his personal cell phone that was accessed through a Cargill mobile-

---

[10] Williams Decl. ¶ 10.

[11] Williams Decl. ¶ 7. As noted on the record, in ordering an unstructured date range for party discovery beginning in 2013, two years before the start of the alleged conspiracy, the MDL Court considered the burdens on the parties.  But the MDL Court did not consider the burdens on non-parties, including on individuals.

[12] Howard Decl. ¶¶ 4, 5; Williams Decl. ¶ 5.

[13] Williams Decl. ¶ 13.

[14] Williams Decl. ¶ 13.

device-management system, such as an Outlook app provided by Cargill and linked to the Cargill systems.[15]

The parties in the *Cattle* Litigation agreed on 38 document custodians for Cargill.[16] Mr. Howard is not Cargill's only document custodian—far from it—and Plaintiffs will have a robust record in the *Cattle* Litigation regardless of whether or how much of his personal cell phone data is provided. Cargill has been and will be producing documents from the work files of those custodians that are within its possession, custody, and control.[17] Thus, Plaintiffs will already have emails, instant messages, and other documents from Mr. Howard's work files and from the records of the 37 other custodians. Cargill also will be producing nonprivileged, responsive text messages and certain social media from 8 of its document custodians whose cell phones are in Cargill's possession, custody, and control, and Cargill has produced additional text messages from two document custodians who provided limited consent.[18] Finally, Plaintiffs have already sought and received phone records from third-party telephone companies reflecting Mr. Howard's (and other document custodians') call and text logs over a broad period of time.[19]

Because Cargill disclosed that Mr. Howard's cell phone was not in its possession, custody, or control, on February 10, 2023, Plaintiffs subpoenaed Mr. Howard to produce five (5) categories of documents by February 24, 2023[20]:

---

[15] Howard Decl. ¶ 9.

[16] Williams Decl. ¶ 10.

[17] Williams Decl. ¶ 11.

[18] Williams Decl. ¶ 12.

[19] Williams Decl. ¶ 14.

[20] Stull Decl., Ex. 1 (Subpoena).

**REQUEST 1**: All Documents concerning your Communications, including Text Messages, that you sent to or received from a current or former Representative of a Defendant during the Relevant Time Period.

**REQUEST 2**: All Documents concerning your Communications, including text messages, regarding the U.S. markets for Beef, Cattle and/or Cattle Futures that, during the Relevant Time Period, you sent to or received from any other Person who was not at the time a Representative of a Defendant.

**REQUEST 3**: All Social Media Data during the Relevant Time Period concerning the markets for Beef, Cattle and/or Cattle Futures or reflecting Communications with a current or former Representative of a Defendant.

**REQUEST 4**: Documents reflecting contact information relating to individuals who are a current or former Representative of a Meat Packer, or any other individual with whom you communicated about the markets for Beef, Cattle and/or Cattle Futures.

**REQUEST 5**: Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, Signal), Facebook Messenger, WhatsApp, Telegram, Slack, Microsoft Teams, Discord, Truth Social, and other such applications.

The subpoena contains broad definitions of many of these terms.

On February 22, 2023, counsel for Mr. Howard met and conferred with Plaintiffs regarding the scope of the subpoena.[21] Following the meet and confer, Mr. Howard served Plaintiffs with written responses and objections.[22]

On March 3, March 7, and March 20, 2023, counsel met and conferred regarding the scope of the subpoenas; the parties further met and conferred via letters from Plaintiffs dated March 2

---

[21] Stull Decl. ¶ 4.

[22] Stull Decl. ¶ 4, Ex. 5 (Stull Feb. 23, 2023 Ltr.).

and March 17, 2023 and a letter from counsel for Mr. Howard dated March 29, 2023.[23] The parties made significant progress in the meet and confer efforts but were unable to resolve all disputes regarding the proper scope of the subpoenas.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 "governs the subpoenas served on non-parties[.]" *Ploen v. AIG Specialty Ins. Co.*, No. 21-CV-2248 (PJS/JFD), 2022 WL 2208328, at *3 (D. Minn. June 21, 2022). "The scope of discovery for a Rule 45 subpoena is the same as the scope of discovery under Rules 34 and 26 and is subject to the same constraints on relevance and proportionality," although "courts have heightened concern for and reluctance to impose discovery burdens on a non-party compared to a party." *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/HB), 2022 WL 972401, at *7, 11 (D. Minn. Mar. 31, 2022) (citations omitted); *see also Mille Lacs Band of Ojibwe v. Cnty. of Mille Lacs*, No. 17-cv-5155 (SRN/LIB), 2020 WL 1847574, at *5 (D. Minn. Apr. 13, 2020).

Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "The court for the district where compliance is required must enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." *Id.*; *Mays v. Sherburne Cnty. Jail*, No. 20-cv-506 (PAM/KMM), 2020 WL 4218806, at *4 (D. Minn. July 23, 2020) ("Under Rule 45(d), when a subpoena is issued to a third party, the court is required to enforce a party's duty to limit imposing undue burden or expense on the person subject to the subpoena."). On timely motion, the court for the district where compliance is

---

[23] Stull Decl. ¶¶ 4-5.

required must quash or modify a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).

When determining if a burden is undue, courts consider the same factors as those relied on for proportionality in Rule 26(b). *See Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999); *see also Deluxe Fin. Servs., LLC v. Shaw*, No. 16-cv-3065 (JRT/HB), 2017 WL 7369890, at *4 (D. Minn. Feb. 13, 2017) ("These considerations are echoed in the proportionality factors set forth in the amended Rule 26(b)(1)."). "Concern for the burden on a non-party subject to a subpoena carries special weight when balancing competing needs" and "[t]he Court *must* quash or modify a subpoena that imposes an undue burden on the non-party or requests irrelevant information." *In re Pork*, 2022 WL 972401, at *8 (citing Fed. R. Civ. P. 45(c)(3)(A)(iv)).

The movant does not bear a "rigid evidentiary burden." *Id.* at *8. Instead, "the parties and the Court bear 'collective' responsibility to consider relevance and proportionality/undue burden," and the Court "considers all the information brought by the parties to determine the appropriate scope of the subpoenas." *Id.* (citing *Deluxe Fin. Servs.*, 2017 WL 7369890, at *4.

## ANALYSIS

### I.   Plaintiffs Have a Heavy Burden to Demonstrate Why Discovery of Mr. Howard's Personal Cell Phone Is Warranted.

Federal courts recognize that individuals have a right of privacy from unwarranted invasions into their personal information—including cell phone data, call records, and text messages—even in civil discovery. *E.g.*, *Lawrence v. Hoban Mgmt., Inc.*, 305 F.R.D. 589, 591 (S.D. Cal.), *on reconsideration in part*, 103 F. Supp. 3d 1216 (S.D. Cal. 2015) ("Federal courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to

discovery requests." (quoting *Zuniga v. W. Apartments*, No. CV 13–4637 JFW(JCx), 2014 WL 2599919, at *3 (C.D. Cal. Mar. 25, 2014))). "When the constitutional right of privacy is involved, 'the party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are carefully balanced.'" *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) (quoting *Wiegele v. Fedex Ground Package Sys.*, No. 06-CV-01330-JM(POR), 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007)). "Compelled discovery within the realm of the right of privacy 'cannot be justified solely on the ground that it may lead to relevant information.'" *Id.* (*quoting Wiegele*, 2007 WL 628041, at *2).

Recognizing this right to privacy, courts have held that "a party has a privacy interest" in their personal matters, including "personal phone call records," and "can challenge a subpoena on this basis." *Brown v. Stairstep Initiative Co.*, No. 05-cv-2102 (JMR/FLN), 2006 WL 8443265, at *1 n.4 (D. Minn. June 7, 2006). And in *Clark v. Johnson*, the district court allowed the plaintiff to challenge a subpoena based on her "personal interest in the privacy of her and her husband's cell phone records." No. 14-cv-582-JED-PJC, 2015 WL 4694045, at *1–2 (N.D. Okla. Aug. 6, 2015).

Like the individuals in those cases, Mr. Howard has a legitimate confidentiality interest in the contents of his personal cell phone. Although he used his cell phone for some work purposes, he understood that it was his personal device and that Cargill only had limited access to the Cargill-provided apps such as Outlook through which Mr. Howard accessed data on Cargill systems.[24] But such Cargill-provided data is not at issue in this motion because it is already subject to discovery

---

[24] Howard Decl. ¶ 9.

in the *Cattle* Litigation. Plaintiffs instead seek to intrude into Mr. Howard's text messages, contacts, and social media. Plaintiffs' overbroad and burdensome subpoena, aimed at a non-party's individual personal data, cannot be justified, particularly given the voluminous discovery Plaintiffs already will have access to from Defendants and other third-party discovery in the *Cattle* Litigation. That Plaintiffs may be able to identify some more data from Mr. Howard's cell phone cannot outweigh the overbreadth of the requests, even as modified by Plaintiffs in meet-and-confers. Mr. Howard's privacy—and the privacy of his personal contacts—should not be invaded merely because Plaintiffs believe they *might* find a communication of interest. Instead, Plaintiffs must demonstrate "a compelling need" for the discovery, such that Plaintiffs' need outweighs Mr. Howard's undeniable privacy rights. Plaintiffs cannot make this showing.

## II.    The Court Should Meaningfully Limit the Scope of Plaintiffs' Subpoena.

### A.    The Court should limit the Relevant Time Period to April 1, 2017 to June 30, 2020.

Mr. Howard was in a Cargill role relevant to the underlying litigation (beef production and scheduling), for only a limited period of time—April 1, 2017, to June 30, 2020. Additionally, Plaintiffs do not even allege that a conspiracy began until January 1, 2015. Third Am. Compl., *In re DPP Beef Litig.*, Case No. 20-cv-1319 (JRT/HB), ECF No. 304 (D. Minn. Jan. 18, 2022). Nonetheless, the subpoena defines the "Relevant Time Period" for each request more broadly—December 1, 2013, through June 30, 2020.[25]

Mr. Howard joined Cargill in 2013 as a Food Scientist, working in product research and development. From December 2013 to December 2014, he was responsible for ground beef quality

---

[25] Stull Decl., Ex. 1 (Subpoena).

and, from December 2014 to February 2016, he worked on beef carcass utilization.[26] From there, Mr. Howard continued to work in the research-and-development area. From February 2016 to April 2017, Mr. Howard was a Value Creation Manager, managing the new product development.[27] Plaintiffs have not demonstrated that Mr. Howard would have anything more than a *de minimis* amount of relevant documents or communications on his *personal* cell phone while in these research-and-development roles at Cargill.

Instead, Plaintiffs point to what Mr. Howard's former employer, Cargill, agreed to produce in party discovery.[28] Plaintiffs miss the point. That *Cargill*, a party in this litigation, may have agreed to a longer time period is irrelevant to whether Mr. Howard, a non-party, must incur similar burdens. Furthermore, as Magistrate Judge Bowbeer explained in a similar context, although a "uniform time frame makes good sense for efficient conduct of party discovery, it is not as appropriate for individual custodians whose confidential personal information is at stake, nor is it proportional in view of the narrower time periods within which these individuals were in relevant roles and therefore may have had relevant communications (if at all)." *In re Pork*, 2022 WL 972401, at *14.

Here, it is undisputed that Mr. Howard was only in a relevant role at Cargill starting in April 2017. Accordingly, Mr. Howard requests that the Court limit the time period to start when

---

[26] Howard Decl. ¶ 3.

[27] Howard Decl. ¶ 4.

[28] Stull Decl., Ex. 2 (Plaintiffs' Mar. 2, 2023 Ltr.).

Mr. Howard had a relevant role (April 1, 2017) and to end when the Court-ordered unstructured data period ends (June 30, 2020).[29]

**B.     Mr. Howard should not be required to comply with Instruction No. 9 and provide a log of documents no longer in his possession, custody, or control.**

Instruction No. 9 seeks to require Mr. Howard to identify "any Document responsive to any Request [that] once was, but is no longer, in [his] possession, custody, or control, or has been lost, destroyed, discarded, or otherwise disposed of" by logging "a. the nature of the Document; b. the Person who prepared or authorized the Document and, if applicable, the Person to whom the Document was sent; c. the date on which the Document was prepared or transmitted; and d. if possible, what has happened to the Document and where it or any copies of it may be located, or if the Document was lost or destroyed, the date on which the Document was lost or destroyed, and, if destroyed, the conditions of and the reasons for such destruction and the Persons requesting and performing the destruction."[30] Plaintiffs suggest that "[t]his instruction will facilitate future meet-and-confer sessions and will ensure transparency about any spoliation issues."[31]

In other words, Plaintiffs' subpoena requires that Mr. Howard do more than produce relevant data and documents, because Instruction No. 9 purports to impose a logging requirement for documents no longer in his possession, custody, or control. *See* Subpoena Instruction No. 9. Plaintiffs cite no authority for this logging requirement even for party discovery, much less discovery directed toward non-party individuals. Furthermore, the request is burdensome on its

---

[29] Williams Decl. ¶ 7.

[30] Stull Decl., Ex. 1 (Subpoena).

[31] Stull Decl., Ex. 2 (Plaintiffs' Mar. 2, 2023 Ltr.).

face, as individuals like Mr. Howard would not have a detailed memory of the information requested nor do individuals have a means to gather such information.

### C.     The Court should limit the scope of Request No. 2.[32]

Request No. 2 seeks "[a]ll Documents concerning your Communications, including text messages, regarding the U.S. markets for Beef, Cattle and/or Cattle Futures that, during the Relevant Time Period, you sent to or received from *any other Person* who was *not* at the time a Representative of a Defendant."[33] This request is facially overbroad. For example, communications between Mr. Howard and non-defendant meatpackers are irrelevant, especially in light of Magistrate Judge Bowbeer's party-discovery ruling that even Defendants need not produce communications with "other packers" (i.e., beef meatpackers that are not defendants in that litigation) because Plaintiffs' requests were a "fishing expedition."[34]

During meet and confers, Plaintiffs proposed to modify Request No. 2 in two respects. First, Plaintiffs proposed to limit the request to communications with third-party conduits, potential (or actual) Beef customers, and Cattle suppliers (as opposed to "any other Person").[35] And second, Plaintiffs proposed to *expand* the subject matter of Request No. 2 to include not just communications about the "U.S. markets for Beef, Cattle and/or Cattle Futures," but also

---

[32] Request No. 1 seeks "[a]ll Documents concerning your Communications, including Text Messages, that you sent to or received from a current or former Representative of a Defendant during the Relevant Time Period." This request, without any subject-matter limitation, is facially overbroad. During the meet-and-confers, Plaintiffs agreed to put subject matter limitations on this request to mirror limitations governing party discovery. With that understanding, there does not appear to be a dispute as to this request.

[33] Stull Decl., Ex. 1 (Subpoena).

[34] Williams Decl., Ex. A (Mar. 24, 2022 *Cattle* Litig. Hr'g Tr. at 163).

[35] Stull Decl., Ex. 2 (Plaintiffs' Mar. 2, 2023 Ltr.).

communications related to: "participation in a Trade Association meeting or event, or other Industry Meeting or Investor Conference" and "proposed or actual meetings, calls, or other communication of unspecified or unclear purpose."[36]

Request No. 2, as modified, is still overbroad and unduly burdensome. To begin, Plaintiffs' attempt to expand Request No. 2 to include communications about Trade Associations or Investor Conferences, and meetings of "unspecified or unclear purpose" is improper. Request No. 2 (on its face) seeks only communications about the U.S. market for Cattle, Beef, and Cattle Futures. Mr. Howard should not be required to respond beyond what Plaintiffs have subpoenaed. *See Evangelista v. Spartan Light Metal Prods., Inc.*, No. 9-CV-12531, 2011 WL 2489994, at *2 (E.D. Mich. June 21, 2011) (denying motion to compel where party sought to "rewrite its discovery" by broadening the scope of its requests on the grounds that "[d]iscovery requests should not be a moving target"); *see also Hageman v. Morrison Cnty.*, No. CV 19-3019 (JRT/HB), 2021 WL 2680194, at *1 (D. Minn. June 30, 2021) (affirming denial of motion to compel production of documents beyond the scope of the original request); *Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. 14-CV-3103 (SRN/FLN), 2016 WL 11783759, at *3 (D. Minn. Dec. 14, 2016) (same).

Further, in response to Request No. 1, Mr. Howard has already negotiated in good faith and agreed to review his personal cell phone for relevant communications *with Defendants*, including communications related to Cattle and Beef markets in the United States, Cattle Futures, Trade Association meetings, and proposed/actual meetings of unspecified purposes.[37] Plaintiffs have not explained the relevance of Mr. Howard's communications with *non-Defendants* to

---

[36] Stull Decl., Ex. 2 (Plaintiffs' Mar. 2, 2023 Ltr.).

[37] Stull Decl., Ex. 4 (Stull Mar. 29, 2023 Ltr.).

Plaintiffs' allegations that *Defendants conspired* to manage cattle procurement and beef production. For example, hypothetical text messages about Beef prices between Mr. Howard and a potential Beef customer have no relevance to Plaintiffs' conspiracy allegations. And even if marginally relevant, the request is not proportional to the burdens that it would place on Mr. Howard to review all such communications that may exist on his personal cell phone.

Plaintiffs state that even though they cannot point to a specific agreement with Defendants, the "course of conduct has been for all communications falling within [the agreed upon categories] to be produced, regardless of which third parties were involved with the communication."[38] Plaintiffs again miss the point. Mr. Howard, a non-party, is obviously not bound by agreements between Plaintiffs and Defendants in the *Cattle* Litigation, much less an undocumented "course of conduct" that has been followed in party discovery. Given Mr. Howard's substantial privacy interests, Plaintiffs "must demonstrate a compelling need for discovery." *Artis*, 276 F.R.D. at 352. Plaintiffs have not shown a "compelling need" for Mr. Howard's hypothetical communications with non-Defendants. Nor could they, given the voluminous discovery that they are already obtaining from Cargill (i.e., all relevant documents from Mr. Howard's work files in Cargill's possession, custody, and control) and Mr. Howard himself (i.e., relevant communications with Defendants). *See In re Pork*, 2022 WL 972401, at *11 (noting that "courts have *heightened* concern for and reluctance to impose discovery burdens on a non-party compared to a party" (emphasis added)).

---

[38] Stull Decl., Ex. 3 (Plaintiffs' Mar. 17, 2023 Ltr.).

**D.** **The Court should not require Mr. Howard to respond to Request No. 3 or, alternatively, should limit its scope.**

Request No. 3 seeks "[a]ll Social Media Data during the Relevant Time Period concerning the markets for Beef, Cattle and/or Cattle Futures **or** reflecting Communications with a current or former Representative of a Defendant."[39] The subpoena defines "Social Media Data" broadly to include "Communications or other information posted on, or exchanged between two or more users of, a social media platform (e.g., Facebook, Instagram, TikTok, Discord, Truth Social, etc.) either directly through a messaging application or through postings made to a public or private group."[40]

During meet and confers, Plaintiffs clarified that this request "seeks productions . . . for all Social Media Data: (1)(a) sent to or received from a current or former Representative of a Defendant, a third-party conduit, or potential (or actual) Beef customers or Cattle suppliers during the Relevant Time Period, or (b) posted to a public or private forum, and (2) concerning the markets for Beef, Cattle, and/or Cattle Futures."[41]

Mr. Howard should not be required to respond to this request, even as modified. For starters, to the extent that Plaintiffs seek Mr. Howard's social media postings to "a public forum," such information is equally available to Plaintiffs through searches of the social media applications themselves. *See generally PETCO Animal Supplies Stores, Inc. v. Ins. Co. of N. Am.*, No. CIV. 10-682 SRN/JSM, 2011 WL 2490298, at *26 (D. Minn. June 10, 2011) (quashing subpoena that sought documents and records that were "readily and equally accessible . . . through the public

---

[39] Stull Decl., Ex. 1 (Subpoena) (emphasis added).

[40] Stull Decl., Ex. 1 (Subpoena).

[41] Stull Decl., Ex. 2 (Plaintiffs' Mar. 17, 2023 Ltr.).

record"); *see also In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 1:14-ML-2570-RLY-TAB, 2017 WL 4099209, at *4 (S.D. Ind. Sept. 15, 2017) (declining to compel the plaintiff to produce publicly available social media content because, "[g]iven that the public information is equally accessible to both parties, Plaintiff need not foot the expense (and effort) of providing to the Cook Defendants what they can find in an internet search").

As for any private, personal messages, Plaintiffs cannot justify imposing this burdensome request on a non-party individual, particularly in light of all the other discovery Plaintiffs will have at their disposal. In particular, and as explained above, Mr. Howard should not be required to search for and produce private social media communications with non-Defendants, including so-called "third-party conduits" or Beef customers/Cattle suppliers. Plaintiffs have not shown that such social media communications are relevant to Plaintiffs' conspiracy allegations or that they have a "compelling need" for such discovery. Accordingly, and at a minimum, the Court should limit the request to include only social media communications with Defendants, that can be collected with reasonable efforts, relating to the markets for Cattle, Beef, and Cattle Futures.

### E. The Court should not require Mr. Howard to respond to Request No. 4 or, alternatively, should limit its scope.

Request No. 4 seeks "[d]ocuments reflecting contact information relating to individuals who are a current or former Representative of a Meat Packer, or *any other individual* with whom you communicated about the markets for Beef, Cattle and/or Cattle Futures."[42] "Meat Packer" is defined to mean any beef meatpacker that is not a Defendant in the *Cattle* Litigation. Again, Judge

---

[42] Stull Decl., Ex. 1 (Subpoena).

Bowbeer in the *Cattle* Litigation already expressly ruled that Defendants did not have to produce such contact information for "other packers,"[43] which equates to Meat Packer in this subpoena.

During meet and confers, Plaintiffs clarified that they are seeking "contact information from the Relevant Time Period for any person who is a Representative of a Defendant, a third-party conduit, or potential (or actual) Beef customers or Cattle suppliers."[44] Even as modified, Plaintiffs' request is overbroad and unduly burdensome.

Mr. Howard's former employer is already producing Mr. Howard's relevant contact information that is in Cargill's possession, custody, and control. Plaintiffs have not shown that Mr. Howard, a non-party, should be required to comb through his contact information in his personal cell phone for additional information. Indeed, Plaintiffs will already be able to see with whom he communicated by reviewing Cargill's productions of his work-related communications and contacts, and/or through any communications that Mr. Howard is required to produce pursuant to a subpoena. Moreover, Plaintiffs' attempt to narrow this request by stating they seek contact information for "third-party conduits or potential (or actual) Beef customers or Cattle suppliers" is vague and ambiguous. Although Plaintiffs have identified a discrete list of "third-party conduits" neither "Beef customers" nor "Cattle suppliers" has been defined by Plaintiffs.

At a minimum, and for the reasons explained above, if the Court were inclined to order Mr. Howard to produce contact information from his personal cell phone, the Court should limit it to Mr. Howard's contacts with *Defendants*, and not Plaintiffs' proposed list of so-called "third-party conduits" and/or Beef customers/Cattle suppliers.

---

[43] Williams Decl., Ex. A (Mar. 24, 2022 *Cattle* Litig. Hr'g Tr. at 163).

[44] Stull Decl., Ex. 2 (Plaintiffs' Mar. 2, 2023 Ltr.).

**F.     The Court should not require Mr. Howard to respond to Request No. 5 or, alternatively, should limit its scope.**

Request No. 5 seeks "[d]ocuments sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, Signal), Facebook Messenger, WhatsApp, Telegram, Slack, Microsoft Teams, Discord, Truth Social, and other such applications."[45]

Mr. Howard should not be required to respond to this request. First, Plaintiffs are not entitled to a list of all communications-related applications Mr. Howard has installed on his cell phone, regardless of whether he used them for work-related purposes or not. Mr. Howard's hypothetical use of SnapChat or other applications for personal purposes is completely unrelated to the alleged conspiracy. Second, to the extent Mr. Howard used any applications for work-related communications, Plaintiffs could just as readily identify those applications by reviewing any documents Mr. Howard may be required to produce in response to Requests Nos. 1–3. Last, this request is pure "discovery about discovery," which is disfavored. *See Est. of Bailet ex rel. Searcy v. City of Colorado Springs*, No. 20-CV-01600-WJM-KMT, 2021 WL 2912921, at *2 (D. Colo. July 12, 2021) ("Comment 6.b. to Principle 6 of *The Sedona Principles, Third Edition* suggests that discovery about discovery should be allowed only if the requesting party can come forward with specific, tangible evidence of a material discovery failure.").

At minimum, the Court should limit this request to require that Mr. Howard identify only those applications that he recalls using for work-related purposes.

---

[45] Stull Decl., Ex. 1 (Subpoena).

## **CONCLUSION**

For the foregoing reasons, the Court should grant Mr. Howard's motion and modify Plaintiffs' subpoena.

Dated: March 31, 2023                    KUTAK ROCK LLP

By: *s/ Jeremy D. Peck*
      Jeremy D. Peck, #36588
      1801 California Street, Suite 3000
      Denver, CO 80202
      Telephone: (303) 297-2400
      Facsimile: (303) 292-7799
      Email: jeremy.peck@kutakrock.com

*Attorneys for Non-Party Scott Howard*