UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE RULE 45 SUBPOENA ISSUED TO NANCY LUCAS DATED FEBRUARY 10, 2023 | Case No. 23-mc-00040 (JFD)<br><br>**ORDER** |
| IN RE RULE 45 SUBPOENA ISSUED TO SCOTT HOWARD DATED FEBRUARY 10, 2023 | Case No. 23-mc-00041 (JFD)<br><br>**ORDER** |
| IN RE RULE 45 SUBPOENA ISSUED TO DON PORTER DATED FEBRUARY 10, 2023 | Case No. 23-mc-00042 (JFD)<br><br>**ORDER** |

This matter is before the Court on a Motion to Quash Subpoena issued to Nancy Lucas (Dkt. No. 1 in Case No. 23-mc-00040), a Motion to Quash Subpoena issued to Scott Howard (Dkt. No. 1 in Case No. 23-mc-00041), and a Motion to Quash Subpoena issued to Don Porter (Dkt. No. 1 in Case No. 23-mc-00042). The motions are granted in part, denied in part, and denied as moot in part, as set forth below.

**I.    Background**

Nancy Lucas, Scott Howard, and Don Porter are former employees of Cargill Meat Solutions Corporation ("Cargill"),[1] a defendant in the MDL *In re: Cattle and Beef Antitrust Litigation*, Case No. 22-md-3031 (JRT/JFD) (D. Minn) ("*Cattle* MDL"). The *Cattle* MDL plaintiffs allege, generally, that the *Cattle* MDL defendants engaged in "a conspiracy to

---

[1] In this Order, "Cargill" includes both Cargill, Incorporated and Cargill Meat Solutions Corporation.

generate unprecedented beef profit margins and manipulate the live cattle futures markets in violation of federal and state antitrust laws as well as the Packers & Stockyards Act and Commodity Exchange Act." *See In re: Cattle & Beef Antitrust Litig*, No. 22-md-3031 (JRT/JFD), slip op. at 1 (D. Minn. Oct. 4, 2022).

Cargill designated Ms. Lucas, Mr. Howard, and Mr. Porter as document custodians in the *Cattle* MDL. There are 39 Cargill document custodians in all. In February 2023, the *Cattle* MDL plaintiffs issued subpoenas to Ms. Lucas, Mr. Howard, and Mr. Porter for information and communications on their personal cell phones. Ms. Lucas, Mr. Howard, and Mr. Porter acknowledge that they used their personal cell phones for business when they worked for Cargill, with Cargill's knowledge and assent. Cargill does not have possession, custody, or control over those phones.

The cell phones aside, Cargill has agreed to produce to the *Cattle* MDL plaintiffs nonprivileged and responsive emails and other communications from Ms. Lucas's, Mr. Howard's, and Mr. Porter's work files in Cargill's possession, custody, or control. Cargill has also agreed to produce nonprivileged and responsive cell phone communications from eight custodians whose cell phones are in Cargill's possession, custody, or control. Ms. Lucas, Mr. Howard, and Mr. Porter submit that the information Cargill will produce should suffice, that the responsive information and communications on their personal cell phones is not relevant or proportional to the needs of the *Cattle* MDL, and that producing information and communication from their cell phones would be unduly burdensome.

## II. Legal Standards

Federal Rule of Civil Procedure 26(b)(1) establishes the scope and limitations of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party seeking the discovery must meet a threshold burden to show relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). "The party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (quoting *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, No. 00-CV-4080 (MWB), 198 F.R.D. 508, 511 (N.D. Iowa Nov. 22, 2000)).

Rule 26 also requires information sought in discovery to be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Rule 45 governs motions to quash subpoenas served on nonparties. A court must quash a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

3

>   (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
>   (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). "The scope of discovery for a Rule 45 subpoena is the same as the scope of discovery under Rules 34 and 26 and is subject to the same constraints on relevance and proportionality." *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/HB), 2022 WL 972401, at *7 (D. Minn. Mar. 31, 2022). That said, a party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "Concern for the burden on a non-party subject to a subpoena carries special weight when balancing competing needs." *In re Pork Antitrust Litig.*, 2022 WL 972401, at *7.

**III.   Discussion**

   **A.   Privacy, Burden, and the Need for Discovery**

"Much of the discovery done in civil suits implicates confidentiality and privacy interests, and courts are often asked to carefully balance these interests with the compelling need for discovery." *In re Mot. Unseal Elec. Surveillance Evid.*, 965 F.2d 637, 641 (8th Cir. 1992). There is no question that Ms. Lucas, Mr. Howard, and Mr. Porter have a substantial privacy interest in their personal cell phones and communications. For many people, cell phones hold "the privacies of life." *Riley v. California*, 573 U.S. 373, 403 (2014) (citation omitted). On the other hand, the Court finds that the *Cattle* MDL plaintiffs have shown a compelling need for communications and other information that may be stored on the cell phones of Cargill's former and current employees, including Ms. Lucas,

4

Mr. Howard, and Mr. Porter, so that the *Cattle* MDL plaintiffs may fully understand the existence and details of the conspiracy alleged in this matter. *See In re Pork Antitrust Litig.*, 2022 WL 972401, at *14 (finding text messages of "employees about pork supply, demand, and pricing" unquestionably relevant to the conspiracy alleged in that matter). The Court also finds that the privacy interests of Ms. Lucas, Mr. Howard, and Mr. Porter will be adequately protected by the existing protective order in the *Cattle* MDL, which extends to nonparties. The *Cattle* MDL plaintiffs will further mitigate privacy concerns by employing targeted search terms—terms on which the *Cattle* MDL parties have already agreed.

With respect to burden on the nonparties, the only real burden identified by Ms. Lucas, Mr. Howard, and Mr. Porter is that they will be without their cell phones for a couple of hours to a couple of days while the phones are being imaged or searched.[2] (Cargill will bear the financial cost of complying with the subpoenas.) This Court "recognizes that being deprived of a phone for more than a day either to mail it in and image it, or simply image it, may be inconvenient, and perhaps burdensome." *See In re Pork*, 2022 WL 972401, at *13. The Court is mindful of the inconvenience and slight burden to Ms. Lucas, Mr. Howard, and Mr. Porter that will be caused by the temporary loss of their cell phones and will require the *Cattle* MDL plaintiffs to act expeditiously and return the phones to Ms. Lucas, Mr. Howard, and Mr. Porter within 48 hours of receiving the phones for imaging or search.

---

[2] The subpoenaed nonparties conceded at the hearing that their phones will be imaged regardless, because they have agreed to respond to Subpoena Request No. 1.

### B.      Relevance of Communications and Information on Ms. Lucas's Phone

With the above considerations in mind, the Court turns to more specific arguments. Ms. Lucas argues that her role at Cargill was limited to protein pricing, which, she contends, was unrelated to Plaintiffs' "supply-side conspiracy allegations." (Lucas Mem. Supp. at 3.) As a Strategic Pricing Director for beef, turkey, and eggs, Ms. Lucas was responsible for pricing beef products, talent acquisitions, growth ventures, and modernizing software and systems. She contends that she was not involved in any decisions about the supply, purchase, or slaughter of beef products.

The *Cattle* MDL plaintiffs retort that they are alleging more than a supply-side conspiracy. Specifically, the alleged conspiracy also includes the price of beef sold by Cargill and other *Cattle* MDL defendants. In addition, some of the alleged means of raising beef prices include artificially inflating the price of beef sold to retail operations, parallel pricing, and exchanging pricing information. Further, according to the *Cattle* MDL plaintiffs, documents already obtained from Cargill show that its pricing process required sales-side employees to assess market trends such as supply and demand, market data, and competitive intelligence. Other documents show that Cargill's sales employees participated in discussions about the pricing and procurement of cattle. Finally, the *Cattle* MDL plaintiffs point out, Cargill designated Ms. Lucas as a document custodian and in its Rule 26(a) disclosures as an individual with information that it may use to support its claims and defenses. The Court finds that Ms. Lucas likely has relevant information and will not quash the subpoena to her in its entirety, as she has requested.

### C. Relevant Time Periods for Mr. Porter and Mr. Howard

The subpoenaed nonparties and the *Cattle* MDL plaintiffs dispute the relevant timeframes for information and communications in Mr. Porter's and Mr. Howard's possession. Mr. Porter asks the Court to limit the relevant timeframe to January 1, 2015 to June 30, 2020. Mr. Howard asks the Court to limit the relevant timeframe to April 1, 2017 to June 30, 2020.

The Court establishes the relevant timeframe for the subpoena served on Mr. Porter as June 1, 2014 to June 30, 2020. Mr. Porter became a harvest manager of fed cattle processing operations on June 1, 2014, and that date is the start date for discovery from Mr. Porter that the parties agreed to in the *Cattle* MDL. The *Cattle* MDL parties based that date in part on a ruling by U.S. Magistrate Judge Hildy Bowbeer (retired), who was previously assigned to the MDL. Judge Bowbeer determined that unstructured-data discovery predating the class period by two years is relevant and proportional. (Herrera Decl. Ex. LL at 152–53.) Commencing the relevant timeframe for Mr. Porter within that two-year window is consistent with Judge Bowbeer's findings of relevance and proportionality.

The Court establishes the relevant time period for Mr. Howard as April 1, 2017 to June 30, 2020. That period of time is when Mr. Howard was in a role at Cargill relevant to the *Cattle* MDL, involving beef production and scheduling. The Court finds that producing communications and information outside that timeframe would be unduly burdensome and not proportional to the needs of the case.

### D.  Instruction No. 9

Plaintiffs have withdrawn their request to compel Ms. Lucas, Mr. Porter, and Mr. Howard to provide a log of documents that are no longer in their possession, custody, or control, as requested by Instruction No. 9. This request is therefore denied as moot.

### E.  Request No. 2

Subpoena Request No. 2 seeks "[a]ll Documents concerning your Communications, including text messages, regarding the U.S. markets for Beef, Cattle and/or Cattle Futures that, during the Relevant Time Period, you sent to or received from any other Person who was not at the time a Representative of a Defendant." The *Cattle* MDL plaintiffs later offered to limit the request to communications sent or received from third-party conduits,[3] beef customers, or cattle suppliers. The *Cattle* MDL plaintiffs also agreed to exclude text messages about meetings or communications with an unspecified or unclear purpose. The Court finds Request No. 2, as narrowed, seeks relevant and proportional information and is not unduly burdensome. Responsive communications would be relevant to show the effect of the *Cattle* MDL defendants' alleged actions on the price of cattle and beef, the motivations behind operational decisions, and the identity of individuals who may have passed information between defendants. The request, as narrowed, is also consistent with the *Cattle* MDL parties' agreements on the scope of discovery. The Court therefore orders

---

[3] The *Cattle* MDL plaintiffs described a third-party conduit as "a nonparty, such as a trade association or industry publication employee who in our view and based on the documents that we've seen that have been produced to date, have helped facilitate the exchange of competitively sensitive information between the defendants in this case." (Mot. Hr'g Tr. at 17.)

Ms. Lucas, Mr. Porter, and Mr. Howard to provide communications and information responsive to Request No. 2, as narrowed.

### F.     Request No. 3

Subpoena Request No. 3 asks for "[a]ll Social Media Data during the Relevant Time Period concerning the markets for Beef, Cattle and/or Cattle Futures or reflecting Communications with a current or former Representative of a Defendant." The *Cattle* MDL plaintiffs later offered to limit the request to "all Social Media Data: (1)(a) sent to or received from a current or former Representative of a Defendant, a third-party conduit, or potential (or actual) Beef customers or Cattle suppliers during the Relevant Time Period, or (b) posted to a public or private forum; and (2) concerning the markets for Beef, Cattle, and/or Cattle Futures." (*Cattle* MDL Pls.' Mem. at 28.)

The Court will further narrow Request No. 3 by requiring the *Cattle* MDL plaintiffs to identify the relevant Beef customers and Cattle suppliers. With that further limitation, the Court finds Request No. 3, as narrowed, seeks relevant and proportional information and is not unduly burdensome. The *Cattle* MDL plaintiffs have shown that the *Cattle* MDL defendants' custodians likely used social media to communicate with each other concerning issues in this litigation. Further, the request, as narrowed, is consistent with the scope of discovery agreed to by the parties in the *Cattle* MDL. The Court therefore orders Ms. Lucas, Mr. Porter, and Mr. Howard to provide social media data responsive to Request No. 3, as narrowed. This includes postings to a public forum, which the Court includes because there are many social media platforms, and the subpoenaed nonparties may use certain settings or usernames that would make their postings not equally available to the

*Cattle* MDL plaintiffs. The Court's order does not extend, however, to private social media data that is not relevant to the issues in the case.

### G. Request No. 4

Subpoena Request No. 4 seeks "[d]ocuments reflecting contact information relating to individuals who are a current or former Representative of a Meat Packer, or any other individual with whom you communicated about the markets for Beef, Cattle and/or Cattle Futures." The *Cattle* MDL plaintiffs later offered to narrow the request to "contact information for any person who is or was an owner, Employee, consultant, officer, board member, representative, or agent of: (i) a Defendant; (ii) a cattle/beef industry or financial analyst; or (iii) a Trade Association." (*Cattle* MDL Pls.' Mem. at 30.)

The Court finds Request No. 4, as narrowed, seeks relevant and proportional information and is not unduly burdensome. The *Cattle* MDL plaintiffs need the contact information to ascertain the identity of individuals copied on relevant communications and to review phone and text logs subpoenaed from AT&T and Verizon. The narrowed scope is also consistent with the MDL parties' agreement. The Court therefore orders Ms. Lucas, Mr. Porter, and Mr. Howard to provide contact information responsive to Request No. 4, as narrowed.

### H. Request No. 5

Plaintiffs have withdrawn Subpoena Request No. 5, and Ms. Lucas, Mr. Porter, and Mr. Howard need not respond to it.

Accordingly, based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Motion to Quash Subpoena issued to Nancy Lucas (Dkt. No. 1 in Case No. 23-mc-00040), the Motion to Quash Subpoena issued to Scott Howard (Dkt. No. 1 in Case No. 23-mc-00041), and the Motion to Quash Subpoena issued to Don Porter (Dkt. No. 1 in Case No. 23-mc-00042) are **GRANTED IN PART**, **DENIED IN PART**, and **DENIED AS MOOT IN PART**, as set forth fully above.

Date: July 6, 2023

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge